## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TY KEMPTON, individually,
and on behalf of all others similarly
situated,

    Plaintiff,

  v.

LIFE FOR RELIEF AND
DEVELOPMENT,
a California non-profit corporation,

    Defendant.

Case No. 18-cv-13404

The Honorable Robert H. Cleland

---

### LIFE FOR RELIEF AND DEVELOPMENT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY, AND TO STRIKE PLEADINGS

Pursuant to FED. R. CIV. P. 12(b)(6), this court's inherent powers, and FED. R. CIV. P. 12(f), Defendant Life for Relief and Development ("Life for Relief") hereby respectfully moves to dismiss Plaintiff Ty Kempton's amended complaint for failure to state a claim upon which relief can be granted, or in the alternative to stay the case, and to strike certain pleadings from the complaint. The factual and legal bases for Life for Relief's Motion are explained more fully in the attached Brief accompanying this Motion.

Pursuant to Local Rule 7.1(a), Life for Relief's counsel contacted Plaintiff's counsel, explained the nature of and legal bases for the relief requested in this Motion, and sought but did not obtain concurrence in the relief requested.

Dated:  February 19, 2019                     Respectfully submitted,

                                       By:   */s/ Matthew P. Allen*

                                       Thomas W. Cranmer (P25252)
                                       Matthew P. Allen (P57914)
                                       **MILLER, CANFIELD,**
                                         **PADDOCK AND STONE, P.L.C.**
                                       840 West Long Lake Road, Suite 150
                                       Troy, Michigan  48098
                                       Telephone:  (248) 879-2000
                                       Facsimile:  (248) 879-2001
                                       E-Mail:  cranmer@millercanfield.com
                                       E-Mail:  allen@millercanfield.com

                                       *Attorneys for Defendant*
                                       *Life for Relief and Development*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TY KEMPTON, individually,
and on behalf of all others similarly
situated,

               Plaintiff,

   v.

LIFE FOR RELIEF AND
DEVELOPMENT,
a California non-profit corporation,

               Defendant.

Case No. 18-cv-13404

The Honorable Robert H. Cleland

---

**LIFE FOR RELIEF AND DEVELOPMENT'S**
**BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**
**<u>OR, IN THE ALTERNATIVE, STAY, AND TO STRIKE PLEADINGS</u>**

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................1

II.   ARGUMENT................................................................................5

    A.    Plaintiff Has Failed to Plead Facts Demonstrating it is Plausible that Life for Relief Uses an Automatic Telephone Dialing System ..................................................................................5

    B.    The State of Law as to Prior Express Consent is in Flux, and Warrants a Stay of the Case Pending Clarification from the FCC.........................................................................................10

    C.    Plaintiff's Immaterial, Impertinent, and Scandalous Allegations Should be Stricken..........................................................14

III.  CONCLUSION...........................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*ACA Int'l v. FCC*
  885 F.3d 687 (D.C. Cir. 2018)...................................................................11, 12

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009)..............................................................................5, 8, 9

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007)...................................................................................5, 9

*Charvat v. EchoStar Satellite, LLC*
  630 F.3d 459 (6th Cir. 2010) .........................................................................14

*Doe v. Cin-Lan, Inc.*
  2009 WL 1508367 (E.D. Mich. May 29, 2009) ...................................................14

*FTC v. E.M.A. Nationwide, Inc.*
  767 F.3d 611 (6th Cir. 2014) ....................................................................13, 14

*Gary v. Trueblue, Inc.*
  346 F.Supp.3d 1040 ...................................................................................7, 8

*Goldstein v. North Jersey Trust Co.*
  39 F.R.D. 363 (S.D.N.Y 1966) ........................................................................15

*Gulf Oil Co. v. Bernard*
  452 U.S. 89 (1981).......................................................................................17

*Kamean v. Local 363, Int'l Bhd. Of Teamsters, Chauffers*
  109 F.R.D. 391 (S.D.N.Y. 1986) .....................................................................18

*Morse v. Weingarten*
  777 F.Supp. 312 (S.D.N.Y. 1991) ...................................................................15

*OKC Corp. v. Williams*
  461 F.Supp. 540 (N.D. Tex. 1978) ..................................................................15

*Pigford v. Veneman*
  215 F.R.D. 2 (D.D.C. 2003).............................................................................15

*In re Rules and Regulations Implementing the Tel. Consumer Prot.
  Act of 1991*
  Report and Order, 18 FCC Rcd. 14014 (July 3, 2003)...................................6, 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*In re Rules and Regulations Implementing the Tel. Consumer Prot.*
   *Act of 1991*
    23 FCC Rcd. 559, 2008 WL 65485 (F.C.C. Jan 4. 2008) ..................................10

*In re Rules and Regulations Implementing the Tel. Consumer Prot.*
   *Act of 1991*
    30 FCC Rcd. 7961, 2015 WL 4387780 (F.C.C. July 20, 2015) ........................10

*Stanbury Law Firm v. IRS*
   221 F.3d 1059 (8th Cir. 2000) .......................................................................15

*Waldo v. Lakeshore Estates, Inc.*
   433 F.Supp. 782 (E.D. La. 1977)....................................................................17

**Statutes**

28 U.S.C. §§ 2341-51..........................................................................................13

47 U.S.C. § 227(a)(1) ...........................................................................................6

47 U.S.C. §227(b)(1)(A) .....................................................................................10

47 U.S.C. § 227(b)(1)(A)(iii) ..........................................................................6, 16

47 U.S.C. § 227(b)(2)..........................................................................................10

**Rules**

Fed. R. Evid. 404(b) ...........................................................................................16

Rule 12(f) ............................................................................................................14

Rule 23(a)(4) .......................................................................................................18

**Other Authorities**

2 MOORE'S FEDERAL PRACTICE § 12.37[1] ...................................................15

## I.    INTRODUCTION

Proposed class action counsel, on behalf of proposed class representative Ty Kempton, has sued Defendant Life for Relief and Development ("Life for Relief"), a non-profit charity, claiming that eight texts he allegedly received from Life for Relief over a two-year period violate the Telephone Consumer Protection Act ("TCPA").  The TCPA prohibits calling a cell phone number without consent using an "automatic telephone dialing system."  These eight texts have allegedly harmed Plaintiff by "disturbing [his] use and enjoyment of his phone, in addition to the wear and tear on the phones' hardware."  Not incidental to the rash of TCPA class action filings like this one, the TCPA also provides a minimum $500 penalty for each text found to violate the TCPA.  To that end, and based on the eight alleged texts Plaintiff received, he and his class action lawyers wish to certify a national class of all persons "similarly situated" for a four-year period.

Looking to capitalize on any anti-Islamic bigotry of any proposed class members, Plaintiff's class action complaint and amended class action complaint each start by smearing Life for Relief's noble charitable mission and work over 26 years with inaccurate and irrelevant allegations attempting to connect Life for

Relief to "radical Islamists," "Islamic extremists," and limiting its recitation of Life for Relief's efforts to countries with high Muslim populations.[1]

Aside from ignobly and improperly engaging in bigoted barratry to try and drum up participation in this proposed class action, the amended complaint fails to plausibly state a necessary element of its TCPA claim, and must be dismissed. In addition, the Federal Communications Commission ("FCC"), empowered by Congress to regulate and enforce the TCPA, is on the verge of issuing a ruling interpreting another element of the TCPA that will also bar Plaintiff's TCPA claim against Life for Relief. Life for Relief therefore seeks three forms of relief with this motion.

<u>First</u>, Life for Relief seeks an order dismissing the complaint for failing to state a claim, inasmuch as Plaintiff's allegations are insufficient to plausibly show that Life for Relief used an Automatic Telephone Dialing System ("ATDS"), which is a required element of the TCPA. To properly plead the use of an ATDS,

---

[1] To the contrary, "Life for Relief and Development is a global humanitarian relief and development organization, headquartered in Southfield, Michigan, USA. Life is dedicated to providing humanitarian aid to people regardless of race, gender, religion and cultural background. . . . Life is in Consultative Status with the Economic and Social Council of the United Nations. It is also a member of InterAction, the largest alliance of U.S. based NGO's and partners with humanitarian agencies such as UNICEF, Brothers Brother Foundation and World Medical Relief. . . . Over the past 26 years, Life has distributed over $462 million in humanitarian aid and relief to over 45 countries. . . ." *See* www.lifeusa.org/about.

Plaintiff is required to plead facts showing it was plausible that Life for Relief used a device capable of storing or producing telephone numbers to be called, using a random or sequential number generator.  He did not.  Instead, he only pled facts alleging Life for Relief sent texts using a group texting system, which is insufficient to state a claim.

Second, if the Court does not dismiss Plaintiff's claim, Life for Relief asks the Court to stay proceedings until the FCC can issue guidance as to the proper interpretation of "express prior consent" under the TCPA.  The TCPA excludes from its scope calls and texts to cellular phones that are made with the "prior express consent of the called party."  The meaning of that phrase is, as the FCC admits, "ambiguous," and the FCC has announced they intend to issue an interpretation of that phrase in the near future.  That ruling may very likely preclude a TCPA claim where a defendant texts plaintiff's number with consent from the number's first subscriber, before the number was reassigned to plaintiff. Here, Plaintiff's number was reassigned to him from a prior user who provided consent to Defendant to text the number.  Plaintiff has alleged in the complaint that Life for Relief lacked *his* consent to send him texts, but Plaintiff does not say anything about whether Life for Relief may have had consent from the prior subscriber of Plaintiff's cell phone number (which Life for Relief did).  Because the interpretation of the TCPA by the FCC is binding on the courts, and its ruling

could obviate Plaintiff's claim against Defendant, this Court should exercise its discretion, and stay this case until the FCC issues a ruling on the proper interpretation of the "prior express consent" term.

Finally, if the Court is not inclined to dismiss the complaint, Life for Relief asks this Court to strike the immaterial, impertinent, and potentially scandalous allegations that Plaintiff Ty Kempton retained in the amended complaint. Plaintiff's original complaint included highly improper allegations about Life for Relief and its CEO, which made the irrelevant allegation that they were "connected" with Islamic extremists. The only possible purpose of such allegations was to inflame anti-Islamic sentiment against Life for Relief. Prior to the amended complaint, Life for Relief asked Plaintiff to remove these improper allegations, and Plaintiff's counsel agreed. But, Plaintiff nevertheless maintained a portion of these assertions anyway, asserting allegations about Life for Relief's fundraising, and then inaccurately connecting that fundraising to unrelated civil penalties from conduct that occurred 15+ years ago. Plaintiff made these allegations while also inaccurately asserting that Life for Relief's charitable effort is limited to certain countries with significant Muslim populations. Because Plaintiff's allegations are not relevant to this case, and because they serve an improper purpose, they should be stricken.

## II.   ARGUMENT

### A.   Plaintiff Has Failed to Plead Facts Demonstrating it is Plausible that Life for Relief Uses an Automatic Telephone Dialing System

To maintain a cause of action in the Federal Courts, a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*., citing *Twombly*, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*., citing *Twombly*, 550 U.S. at 555.

The first step in determining whether a claim is sufficiently pled is to identify the elements of that claim that must be pleaded to state a claim. *See Iqbal*, 556 U.S. at 675. Then, the well-pled allegations are assessed against those elements. While it is true a court "must take all of the factual allegations in the complaint as true," that "tenet … is inapplicable to legal conclusions." *Id*. at 678. Thus, a court can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. The court must then decide whether the pleading's factual allegations, when assumed true, "plausibly give rise to an entitlement to relief." *Id*. at 679.

5

Plaintiff has asserted a single claim against Life for Relief under Section 227(b)(1)(A)(iii) of the TCPA.  (Amended Complaint, Docket Entry ("DE") #9, ¶ 32.)   That section of the TCPA bars companies from making telephone calls (which includes sending text messages) to any cellular telephone service using an "automatic telephone dialing system," or "ATDS," "without express prior consent."[2]  47 U.S.C. § 227(b)(1)(A)(iii); *see also In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003) (holding that the TCPA "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls…."").  The statute also provides a specific definition for an ATDS, defining it as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  Thus, to state a claim for relief, Plaintiff is required to plead sufficient facts to demonstrate at least three things were "plausible":

---

[2] Plaintiff's claim attempts to hit an exceptionally narrow target as to Life for Relief, which is a tax-exempt nonprofit institution.  As a nonprofit, Life for Relief is provided certain exceptions from the full application of the TCPA, including that its communications are presumptively not "solicitation," 47 U.S.C. § 227(a)(3), it is exempt from the National Do Not Call Registry, 47 CFR § 64.1200(d), it may make pre-recorded calls to residential numbers without consent, *see* 47 CFR 64.1200(a)(3)(ii); 47 CFR 64.1200(a)(3)(iv), and it does not require written consent to contact cellular phones, 47 C.F.R. 64.1200(a)(3)(iv).

- That Life for Relief texted Plaintiff;

- That it did so using an ATDS, as defined by the statute; and

- That it lacked express prior consent.

For purposes of this motion, Life for Relief does not contest that it sent a text message that was received by Plaintiff. And, as discussed further below, the state of the law as to express prior consent is in flux, rendering it impossible to currently tell whether Plaintiff has stated a claim as to that element. The remaining pleadings, however, demonstrate that Plaintiff has not plausibly pled that Life for Relief uses an ATDS. Therefore, Plaintiff has failed to state a claim for relief, and its claim should be dismissed.

In this District, to prove a defendant used an ATDS, a plaintiff must provide evidence of something more than just the use of an automated texting system. *See Gary v. Trueblue, Inc.*, 346 F.Supp.3d 1040, 1046 (E.D. Mich. Oct. 11, 2018).[3] As Judge Drain noted in *Trueblue*, "the plain language of the TCPA does not prohibit the use of devices with automated functions." *Id*. at 1046. Thus, in that case a defendant's use of a computerized system to send a group text was not, by itself, an ATDS. *Id*. at 1045-46. Nor was the system an ATDS because it could act "automatically," such as by sending confirmatory messages to opt-out requests.

---

[3] As noted in *Trueblue*, the Sixth Circuit has not yet ruled on the interpretation of an ATDS. *Trueblue*, 346 F.Supp.3d at 1044.

7

*Id*.   It was not an ATDS just because the system included a text-message aggregator that sent group messages.  *Id*.  Even the use of a web browser to send messages through the system was not enough to show an ATDS.  *Id*. at 1046.  "Instead, the statute requires a showing that the system has the capacity to randomly or sequentially dial or text telephone numbers."  *Id*.

The present complaint includes only a few paragraphs with factual allegations regarding Plaintiff's claim of an ATDS,[4] which allegations mimic the assertions in *Trueblue* almost exactly.  (*See* Amended Complaint, ¶¶ 10-12.) Plaintiff alleges that Life for Relief uses an ATDS because:  (1) the system can trigger an automated response by replying "STOP"; (2) the messages are generic and sent to multiple recipients (i.e. a group text); and (3) they were sent using an aggregated texting service that allows a group text to be sent.  (*Id*.)  As noted in *Trueblue*, those allegations, even if true, are insufficient to show the existence of an ATDS because they only show an automated group text system, not necessarily a system with the "capacity to randomly or sequentially dial or text phone numbers."  *Trueblue*, 346 F.Supp.3d. at 1046.  And, while Plaintiff claims these allegations are "consistent with the use of an automatic telephone dialing system to

---

[4] Plaintiff's remaining allegations consist of conclusory assertions of the use of an "autodialer," (Amended Complaint, ¶¶ 3, 9, 11), and a formulaic recitation of the definition of an ATDS from the statute (*Id*., ¶ 10), which do not need to be considered by this Court.  *Iqbal*, 556 U.S. at 678.

send text messages," (Amended Complaint, ¶ 10, last sentence), allegations that are "merely consistent" with wrongful conduct are insufficient as a matter of law. *Iqbal*, 556 U.S. at 678, quoting *Twombly*, at 557 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'").

To be sure, the complaint includes one grammatically confusing sentence that mentions the phrase "the capacity to store or produce cellular telephone number [sic] to be called, using a random or sequential number generator." (Amended Complaint, ¶ 10, first sentence.)  But, that allegation is unhelpful to Plaintiff for two reasons.  First, the sentence structure shows it to be merely a recitation of the definition of an ATDS, not a factual allegation.  And, second, even if it were such an allegation, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, citing Twombly, at 555.  None of the additional factual allegations provided by Plaintiff render it plausible that Life for Relief used an ATDS.

In sum, Plaintiff's factual allegations in the complaint amount to little more than a claim that Life for Relief sends automatic group texts.  But, the law requires more; it requires factual allegations rendering it plausible that Life for Relief used a "system [that] has the capacity to randomly or sequentially dial or text telephone numbers," or an ATDS.  Because such a system is something more than an

automatic-texting system, Plaintiff has failed to state a claim for relief, and his claim should be dismissed.

Alternatively, given the state of the law as to prior express consent, Life for Relief asks the Court to stay this case until the FCC issues clarification on the meaning of "prior express consent of the called party" in the context of reassigned cell phone numbers.

### B.   The State of Law as to Prior Express Consent is in Flux, and Warrants a Stay of the Case Pending Clarification from the FCC

Under the TCPA, a party with "prior express consent of the called party" does not violate the statute when calling or texting that party.   47 U.S.C. §227(b)(1)(A).   Key to the application of this exception is the meaning of the phrase "the called party."   While this phrase may seem relatively simple, its application has proven challenging.   The FCC[5] acknowledged the difficulty with this phrase, declaring the "called party" term "ambiguous" in a 2015 clarifying order.   *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7691, 2015 WL 4387780, ¶ 74 (2015).

---

[5] Congress delegated authority to the FCC to prescribe regulations enforcing the TCPA.   *See* 47 U.S.C. § 227(b)(2).   Using that authority, the FCC has issued a series of orders and rulings.   *See*, *e.g.*, *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 2003 WL 21517853 (F.C.C. July 3, 2003); *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 2008 WL 65485 (F.C.C. Jan 4. 2008); *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 2015 WL 4387780 (F.C.C. July 20, 2015).

Relevant to the present dispute, the definition of the "called party" is especially important in the context of texts and calls to cellular telephone numbers. It is not uncommon for cellular telephone numbers to be reassigned from one individual to another.   And, as the FCC acknowledged, "[t]here is no public wireless telephone number directory and individuals may change their phone numbers without notifying callers beforehand."  *Id.* at ¶ 71.  Thus, a party who has received express consent to call or text a cellular number may text or call a number in good faith believing they have valid consent, and yet still result in contact with a person who has not consented.  *See id.*, at ¶¶ 71-72.

In its 2015 Ruling, the FCC tried to navigate these two competing interests by:  (1) defining the "called party" as the "current subscriber and customary users"; and (2) providing a one-call "safe harbor" to good-faith callers who reasonably believe they have consent.  *Id.* at ¶ 72-3.  But, in early 2018, the District of Columbia Circuit struck down the FCC's "called party" definition and one-call safe harbor rule as arbitrary and capricious.  *See ACA Int'l v. FCC*, 885 F.3d 687, 707-08 (D.C. Cir. 2018).  In that ruling, the court acknowledged that the FCC's ruling interpreted that a cellular subscriber's express consent "does *not* lapse with reassignment," hence allowing a "safe harbor" in the first place.  *Id.* at 708.  But, it raised the question of "why should that [continuity of consent] necessarily stop

with a single call?"  *Id.*  Failing to find an adequate answer in the FCC's ruling, the

D.C. Circuit struck it down.  *Id.*

Following the *ACA Int'l* decision, the FCC issued a call for new comments,

including comments "on how to treat calls to reassigned wireless numbers under

the TCPA."  Public Notice, Consumer and Governmental Affairs Bureau Seeks

Comment on Interpretation of the Telephone Consumer Protection Act in Light of

the D.C. Circuit's ACA International Decision, DA 18-493, Released May 14,

2018, attached hereto as **Exhibit 1**.  The FCC's notice sought comment on

questions such as whether the term "called party"  refers to "the person the caller

expected to reach," "the party the caller reasonably expected to reach," "the person

actually reached, the wireless number's present-day subscriber after reassignment,"

or a "customary user…rather than…the subscriber herself?"  **Ex. 1** at 3.  It also

sought comments on reasonable reliance of callers on prior consent, and whether a

safe-harbor was necessary.  **Ex. 1** at 3-4.  The period for comments originally

ended on June 28, 2018, **Ex. 1** at 1, but the FCC opened a brief supplemental

comment period in October, 2018, which ended October 17, 2018.  *See* Public

Notice, Consumer and Governmental Affairs Bureau Seeks Comment on

Interpretation of the Telephone Consumer Protection Act in Light of the D.C.

Circuit's ACA International Decision, DA 18-1014, Released October 3, 2018,

attached hereto as **Exhibit 2**, at 1.  Thus, a new interpretative ruling is expected from the FCC addressing these issues in the near future.

The FCC's ruling on the meaning of the term "called party" is likely to have a significant impact on this case.  The present case involves a minor amount of texting to a cellular telephone number that was reassigned to Plaintiff from one of Defendant's supporters.  That supporter gave Life for Relief consent to be texted.  Thus, the issue of continuity of prior consent (and possibly the applicability of a safe-harbor) is front-and-center in this dispute.  And, once the FCC rules on those issues, they are binding on this Court.  *See* 28 U.S.C. §§ 2341-51 (the "Hobbs Act," which divests district courts of the jurisdiction to review agency decisions).  Awaiting that decision provides ample reason for this Court to stay these proceedings – if it does not dismiss them in the first place.

This Court has broad discretion to stay these proceedings.  For example, such a decision would be in the economic interests of all parties and the Court, and therefore this Court may stay the proceedings under its own inherent authority.  *See FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014) (holding the "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court.").  This issues identified by

the Sixth Circuit in *FTC* as supporting a stay are even more pronounced in this class action case given the significant time and effort the parties and the Court would have to expend to administer and litigate a class action lawsuit of the size and scope Plaintiff seeks, which Defendant would have no choice but to vigorously contest at a substantial cost.

Alternatively, because of the special competency of the FCC in these matters, this Court may further stay these proceedings under the doctrine of primary jurisdiction. *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466-67 (6th Cir. 2010) (holding the doctrine of primary jurisdiction favors staying proceedings in favor of a prompt ruling from an administrative agency when it would promote uniformity, respect Congressional discretion, and where the agency has comparative expertise). Thus, a stay is both warranted and reasonable under the present circumstances.

If the Court is not inclined to dismiss Plaintiff's Complaint, Defendant asks that Plaintiff's irrelevant and bigoted allegations be stricken.

## C.    Plaintiff's Immaterial, Impertinent, and Scandalous Allegations Should be Stricken

Despite specific requests to remove them, Plaintiff retained allegations in his amended complaint about Life for Relief that are immaterial and impertinent to the present litigation, and scandalous. Rule 12(f) gives a court "liberal discretion" to strike such allegations from pleadings. FED. R. CIV. P. 12(f); *Doe v. Cin-Lan, Inc.*,

2009 WL 1508367, *1 (E.D. Mich. May 29, 2009), citing *Stanbury Law Firm v.*

*IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000); *see also* 2 MOORE'S FEDERAL

PRACTICE § 12.37[1] at 12–93 to 12–94 (3d ed. 2002).   While generally

disfavored, motions to strike should nevertheless be granted when:  (1) there is no

legitimate relationship between the challenged portion of the pleading and the

underlying claims; and (2) the challenged portion may prejudice the moving party.

*OKC Corp. v. Williams*, 461 F.Supp. 540 550 (N.D. Tex. 1978).  Under this rubric,

reference to prior "bad acts" issues should be stricken from the pleadings unless

they serve to prove a necessary element of the claim or arise out of the same series

of events as the claim.  *See Morse v. Weingarten*, 777 F.Supp. 312, 319 (S.D.N.Y.

1991); *Goldstein v. North Jersey Trust Co.*, 39 F.R.D. 363, 370 (S.D.N.Y 1966).

References to unrelated prior "bad acts" are "immaterial" and "impertinent"

because they have no bearing on the subject matter of the case, and are not

necessary to the issues in question.  *See* 5C Wright & Miller Federal Prac. &

Procedure § 1382 (3d ed. 2009).  They are "scandalous" because they are not only

irrelevant, but also "unnecessarily reflect[] on the moral character of an

individual…."  *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003).

Plaintiff's amended complaint makes allegations about past civil penalties

that were asserted against Life for Relief.  Specifically, Plaintiff asserts that Life

for Relief was assessed a civil penalty for conduct that allegedly occurred 15 years

ago, and then incorrectly connects that penalty to Life for Relief's fundraising activities in 2015. (Amended Complaint, DE #9, ¶ 1, n. 1.) Those assertions have absolutely no relevance to Plaintiff's sole claim, an alleged violation of Section 227(b)(1)(A)(iii) of the TCPA. (Amended Complaint, ¶ 14-18, 28-31.) To show a violation of Section 227(b)(1)(iii), a plaintiff must prove a defendant: (1) called a cellular telephone number; (2) using an "automatic telephone dialing system"; and (3) without prior express consent. 47 U.S.C. §§ 227(b)(1)(A)(iii). Nothing in the statute requires proof that the accused party has been accused of past criminal or civil behavior; such allegations are irrelevant and inadmissible. FED. R. EVID. 404(b).

Plaintiff's allegations unfortunately continue a pattern of derogatory assertions against Life for Relief clearly intended to inflame negative sentiment against the charity. Originally, Plaintiff's complaint alleged Life for Relief's CEO was "a controversial figure" because he supposedly was "involved in events involving radical Islamists from Al Qaeda, Hamas, Hezbollah and Islamic Jihad." (Complaint, DE #1 at ¶ 2.) Plaintiff also alleged that Life for Relief had "troubling connections to Islamic extremists." (*Id*.) These irrelevant assertions had no legitimate purpose, but instead sought to invoke anti-Islamic feelings in the Court and non-party putative class members, and ascribe those feelings to Life for Relief. While Plaintiff removed some of these allegations in the amended complaint, he

kept allegations directed to the same core intent – to smear Life for Relief's mission by referencing irrelevant conduct, and then to tie those efforts to countries with high Muslim populations. (Amended Complaint, ¶ 1.) Given the improper purpose of these allegations, their prejudicial nature cannot be understated.

Prior to the amended complaint, counsel for Life for Relief objected to these problematic allegations, and counsel for Plaintiff stated it would consider their removal. The retention of the allegations despite that promise raises two related but serious concerns about Plaintiff and/or his counsel.

First, given Plaintiff's relatively minor claim (eight alleged texts in a two-year period), Plaintiff's attempt to paint Life for Relief in a negative light raises "traditional concerns about 'stirring up' litigation" typical in the class-action context. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 n. 11 (1981). Indeed, class action cases are already subject to the "heightened susceptibilities of nonparty class members to solicitation amounting to barratry[,] as well as the increased opportunities of … counsel to 'drum up' participation in the proceedings." *Id*., at 100 n. 12 (quoting *Waldo v. Lakeshore Estates, Inc.*, 433 F.Supp. 782, 790 (E.D. La. 1977). Including claims in the complaint intended to inflame bias against the putative class-action defendant only increases the barratry risk.

Second, Plaintiff's continued insistence on including irrelevant and derogatory assertions about Life for Relief in the complaint raises concerns about

the true motivation of Plaintiff and his counsel, and therefore concerns about the adequacy of them both as class representatives under Rule 23(a)(4).  *See Kamean v. Local 363, Int'l Bhd. Of Teamsters, Chauffers*, 109 F.R.D. 391, 395-96 (S.D.N.Y. 1986) (holding no adequacy of representation where "class representatives are not motivated by the same interests and concerns as the absent class members, [because] there is no assurance that the important litigation decisions made will fairly and adequately vindicate the claims of the absent class members who will be bound by them thereafter").  While Plaintiff does not seek a ruling on that issue here, the fact that it is an issue demonstrates the prejudice implicated by Plaintiff's actions, and the time and cost that will be required to litigate even these preliminary issues incident to class action litigation.

In sum, Plaintiff's allegations are highly irrelevant, clearly prejudicial, and made for an improper purpose.  If the Court is not inclined to dismiss the complaint, then these improper allegations should be stricken.

## III.   CONCLUSION

For the above reasons, Life for Relief asks the Court for an order:  (1) dismissing the complaint in its entirety for failing to state a claim; (2) in the alternative, staying the present case until such a time as the FCC can issue new guidance as to the meaning of the term "called party" in the TCPA; and if the Complaint is not dismissed; and (3) striking Plaintiff's allegations in Paragraph 1

and footnote 1 of the amended complaint, and ordering Plaintiff to file a new complaint omitting those improper allegations.

Dated:  February 19, 2019                    Respectfully submitted,

                                        By:  */s/ Matthew P. Allen*

                                             Jacob D. Koering
                                             **MILLER, CANFIELD,**
                                               **PADDOCK AND STONE, P.L.C.**
                                             225 West Washington Street, Suite 2600
                                             Chicago, Illinois  60606
                                             Telephone:  (312) 460-4272
                                             Facsimile:  (312) 460-4201
                                             E-Mail:  koering@millercanfield.com

                                             Thomas W. Cranmer (P25252)
                                             Matthew P. Allen (P57914)
                                             **MILLER, CANFIELD,**
                                               **PADDOCK AND STONE, P.L.C.**
                                             840 West Long Lake Road, Suite 150
                                             Troy, Michigan  48098
                                             Telephone:  (248) 879-2000
                                             Facsimile:  (248) 879-2001
                                             E-Mail:  cranmer@millercanfield.com
                                             E-Mail:  allen@millercanfield.com

                                             *Attorneys for Defendant*
                                             *Life for Relief and Development*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 19, 2019, I caused a true and correct copy of the foregoing **LIFE FOR RELIEF AND DEVELOPMENT'S MOTION AND BRIEF IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY, AND TO STRIKE PLEADINGS** to be served on all counsel of record via the CM/ECF filing system of the Eastern District of Michigan.

*/s/ Matthew P. Allen*